EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wilfredo García Burgos<br><br>        Recurrido<br><br>        vs.<br><br>Asociación de Empleados del Estado Libre Asociado de Puerto Rico<br><br>        Peticionario | Certiorari<br><br>2007 TSPR 29<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2005-185

Fecha: 20 de febrero de 2007

Tribunal de Apelaciones:

        Región Judicial de San Juan-Panel IV


Juez Ponente:

        Hon. Charles Cordero Peña


Abogado de la Parte Peticionaria:

        Lcdo. Antonio Adrover Robles
        Lcdo. Guillermo Mojica Maldonado

Abogado de la Parte Recurrida:

        Lcdo. José Fco. Chaves Caraballo


Materia:  Pago  de  Indemnización  por  Despido  Injustificado
          (Procedimiento Sumario)



Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo García Burgos

    Recurrido

          vs.                     CC-2005-185        Certiorari

Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

    Peticionario

SENTENCIA

San Juan, Puerto Rico, a 20 de febrero de 2007.

En el caso de autos, se planteó la cuestión de si el director ejecutivo de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico, el Sr. Wilfredo García Burgos, tenía derecho al pago de la mesada que provee la Ley Núm. 80 del 30 de mayo de 1976, por haber sido despedido del cargo que ocupaba en la entidad referida.

El Tribunal de Apelaciones había resuelto que García Burgos sí tenía derecho a tal pago, y la Asociación de Empleados del Estado Libre Asociado de Puerto Rico impugnó ese dictamen ante nos.

Luego de examinar la cuestión aludida a fondo, los miembros de este Tribunal se encuentran igualmente divididos en torno al asunto y la

votación de los Jueces en cuanto a este caso ha resultado en un empate.

En vista de lo anterior, y conforme a la norma establecida para estas situaciones, se confirma por empate el dictamen del Tribunal de Apelaciones.

Por ende, se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que determine las cuantías a que tiene derecho el recurrido por concepto de mesada y honorarios de abogado.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió una Opinión de Conformidad, a la que se une la Juez Asociada señora Fiol Matta. El Juez Asociado señor Rivera Pérez emitió una Opinión de Conformidad. El Juez Presidente señor Hernández Denton emitió una Opinión Disidente, a la que se une el Juez Asociado señor Rebollo López. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo García Burgos

    Recurrido


        vs.                           CC-2005-185
Certiorari


Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

    Peticionario


Opinión de Conformidad emitida por el Juez Asociado señor FUSTER BERLINGERI, a la que se une la Juez Asociada señora FIOL MATTA.


San Juan, Puerto Rico, a 20 de febrero de 2007.


En el caso de autos se plantea la cuestión de si el Director Ejecutivo de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico tiene derecho al pago de la mesada que provee la Ley Núm. 80 del 30 de mayo de 1976.


I

Wilfredo García Burgos (en adelante el recurrido) fue nombrado Director de Finanzas de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico (en adelante AEELA o la Asociación), un nombramiento de alta gerencia, según definido por el Reglamento de Personal de la Asociación. El

recurrido tomó posesión y prestó juramento para su cargo el 2 de agosto de 1993. El 30 de marzo de 1995 fue nombrado Director Auxiliar a cargo del Fondo del Seguro de Salud de la Asociación, que es, igualmente, un puesto de alta gerencia. Dicho nombramiento fue ratificado por la Junta de Directores de la Asociación (en adelante Junta de Directores).

Posteriormente, la Junta de Directores designó al recurrido Director Ejecutivo Interino de la Asociación, nombramiento que fue efectivo el 1 de febrero de 1997. Por último, el 12 de febrero de 1997 la Junta de Directores nombró al recurrido Director Ejecutivo en propiedad con un salario anual de $75,000, más el derecho a "todos los beneficios marginales que disfrutan los empleados gerenciales".

La composición de la Junta de Directores cambió el 21 de marzo de 1997, por decisión de la Asamblea de Delegados de la Asociación, y la nueva Junta separó al recurrido de su puesto de Director Ejecutivo de la Asociación a través de una notificación del 9 de abril de 1997. A raíz del referido cambio en la composición de la Junta de Directores, los integrantes de la antigua Junta instaron una acción ante el Tribunal de Primera Instancia, Sala Superior de San Juan, mediante la cual cuestionaron la facultad de la Asamblea de Delegados para destituir a los miembros de la Junta. Como consecuencia de esta acción, el antiguo Tribunal de Circuito de Apelaciones ordenó la

restitución de los directores destituidos a la Junta referida. Esta recién restituida Junta de Directores nombró nuevamente al recurrido al puesto de Director Ejecutivo de la Asociación el 2 de diciembre de 1997. Inconforme con la aludida decisión del foro apelativo, la Asamblea de Delegados de AEELA recurrió ante nos mediante un *certiorari* y una moción en auxilio de jurisdicción. El 19 de diciembre de 1997 ordenamos la paralización de todos los efectos de la sentencia del Tribunal de Circuito de Apelaciones. En virtud de dicha orden nuestra, la segunda Junta de Directores asumió nuevamente la administración de la Asociación y, en una reunión extraordinaria celebrada el 22 de diciembre de 1997 dejaron sin efecto el nombramiento del recurrido como Director Ejecutivo de la Asociación.

El 22 de diciembre de 2000 el recurrido presentó una demanda ante la Sala Superior de San Juan del Tribunal de Primera Instancia en contra de AEELA en la que alegó que su despido fue injustificado a tenor con la Ley Núm. 80 del 30 de mayo de 1976, 29 L.P.R.A. sec.185a *et seq.* (en adelante la Ley Núm. 80). AEELA contestó la demanda y presentó una solicitud de sentencia sumaria el 14 de marzo de 2002. Luego de diversos trámites procesales, el 27 de febrero de 2004 el foro de instancia dictó una sentencia sumaria a favor de AEELA y determinó que el recurrido no tenía derecho a los beneficios de la Ley Núm. 80 por razón de la naturaleza de su nombramiento como Director Ejecutivo. Explicó que en virtud de la Ley de la Asociación de

Empleados del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. secs. 862 *et seq.,* (en adelante la Ley de AEELA), la Junta de Directores tenía la facultad de nombrar al Director Ejecutivo de la Asociación. Según el Tribunal de Primera Instancia, en virtud de la referida potestad, cada cambio en la composición de la Junta de Directores conllevaba la designación de un nuevo Director Ejecutivo por parte de la Junta, si ésta así lo deseaba; y que tal designación constituía un contrato por tiempo determinado implícito, por lo que el recurrido no podía tener una expectativa de continuidad en su empleo, y no cumplía con los requisitos de la Ley Núm. 80, *supra*.

El recurrido apeló entonces ante el Tribunal de Apelaciones y solicitó que se revocara la sentencia sumaria dictada por el foro de instancia. Reclamó el pago de la mesada al amparo de la Ley Núm. 80, *supra*. El foro apelativo revocó el dictamen impugnado fundamentándose en nuestra jurisprudencia interpretativa de la Ley Núm. 80, *supra.,* a los efectos de que ésta ampara a los empleados ejecutivos siempre que se cumpla con los requisitos dispuestos en ella. Entendió, además, que dichos requisitos quedaron configurados por los hechos del presente caso, y que, por tanto, el recurrido tenía derecho al pago de la mesada y los honorarios de abogado, según dispuesto en la ley. De esta forma el Tribunal de Apelaciones rechazó el argumento de que la falta de confianza de la Junta de

Directores en el recurrido como Director Ejecutivo fuese justa causa para su despido.

El 4 de marzo de 2005 AEELA presentó ante nos un recurso de *certiorari*, en el que hizo el siguiente señalamiento de error:

> Erró el Honorable Tribunal de Apelaciones al revocar la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (...) que determinó que el recurrido no tenía derecho al pago de la mesada dispuesta en la Ley de Despido Injustificado.

El señalamiento de error referido se fundamentó en dos argumentos principales. En primer lugar, AEELA distinguió la figura del Director Ejecutivo de la Asociación de otros tipos de empleados a nivel ejecutivo. Alegó que las labores del Director Ejecutivo de la Asociación eran vitales para el buen funcionamiento de ésta y para la consecución de sus propósitos, según definidos en la Ley de AEELA. Arguyó AEELA que la Ley Núm. 80, *supra.*, no cobijaba al Director Ejecutivo de la Asociación por ser éste el gerente principal de AEELA. En fin, AEELA cuestionó que el recurrido fuese del tipo de trabajador necesitado de protección social. En segundo lugar, AEELA adujo que, aun si la Ley Núm. 80, *supra.*, cobijase al Director Ejecutivo de la Asociación, la situación particular que presenta este caso no permitiría su aplicación, debido a que el cambio en la composición de la Junta de Directores era justa causa para el despido del recurrido.

El 20 de mayo de 2005 expedimos el recurso solicitado.
Ambas partes han comparecido a sustentar sus posturas.

II

A.

AEELA es una institución creada por la Ley Núm. 52 de
11 de julio de 1921, según enmendada, y compuesta por los
empleados públicos del gobierno de Puerto Rico. 35 L.P.R.A.
sec. 862c; Asoc. de Empleados del E.L.A. v. Vázquez, 130
D.P.R. 407, 427 (1992); First Federal v. Srio. de Hacienda,
86 D.P.R. 56, 70 (1962). Su propósito es:

> [e]stimular el ahorro entre los empleados y los
> socios acogidos pensionados; establecer planes
> de seguros incluyendo un seguro por muerte,
> efectuar préstamos, proveer a los empleados y a
> los socios acogidos pensionados hogares y
> facilidades hospitalarias para el tratamiento
> médico de ellos y sus familiares (...). 35
> L.P.R.A. sec. 862b.

Aunque AEELA es un organismo creado por ley, con una
finalidad pública establecida por el Gobierno de Puerto
Rico, ya antes hemos resuelto que no "puede considerarse
como agencia, departamento, instrumentalidad o corporación
pública del Gobierno". Asoc. de Empleados del E.L.A. v.
Vázquez, supra., pág. 429. Así mismo hemos reconocido **que
AEELA no recibe ayuda económica del gobierno**, que funciona
a base de los propios fondos que ella misma genera; y que
se asemeja en su estructura, funciones y objeto a una
cooperativa. Asoc. de Empleados del E.L.A. v. Vázquez,

*supra*., pág. 428; Hernández Montero v. Cuevas, Director, 88 D.P.R. 785, 798 (1963).

La institución es gobernada por una Asamblea de Delegados, y administrada por una Junta de Directores compuesta por diecisiete miembros electos por, y que forman parte de, la Asamblea de Delegados. Las elecciones para seleccionar los miembros de la Junta de Directores se llevan a cabo cada cuatro años. 3 L.P.R.A. sec. 862d. Según dispone la ley, dicha "Junta de Directores tendrá todos los poderes que sean convenientes y necesarios para el logro de los propósitos de la Asociación (...)". 3 L.P.R.A. sec. 862f. Entre estos poderes y facultades se encuentra la potestad de "[n]ombrar un Director Ejecutivo y fijarle su sueldo", 3 L.P.R.A. sec. 862f(p), y de delegarle las "funciones ejecutivas que estime pertinentes para el mejor funcionamiento de la institución". 3 L.P.R.A. sec. 862f(h). Por su parte, "[e]l Director Ejecutivo será el funcionario ejecutivo de la Asociación y cumplirá con los deberes que la Junta de Directores le asigne y prestará la fianza que la Junta de Directores estime conveniente para el fiel cumplimiento de sus deberes". 3 L.P.R.A. sec. 862f(p).

Según el Reglamento de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico de febrero de 1995 (en adelante el Reglamento de AEELA), "las funciones ejecutivas de la Asociación estarán a cargo del Director Ejecutivo". Reglamento AEELA, Art. 17(a). Entre sus funciones están designar al personal necesario para llevar a cabo el plan

de trabajo de la Asociación; informarle a la Junta de Directores sobre la observancia de las directrices que ésta requiera; someter para la consideración de la Junta de Directores un proyecto de presupuesto para el año fiscal siguiente; administrar el presupuesto aprobado por la Junta; velar por el cumplimiento de los reglamentos, convenios y contratos de la Asociación; custodiar los documentos, equipos y materiales de la Asociación; asesorar a la Junta de Directores en sus funciones; y, llevar a cabo todas las tareas que ésta le delegue. Reglamento de AEELA, Art. 17. Cabe señalar que el Reglamento de Personal de la Asociación de Empleados del E.L.A. del 26 de mayo de 1993 (en adelante el Reglamento de Personal) no cubre el puesto de Director Ejecutivo, sino que solamente reglamenta los servicios gerenciales y de alta gerencia.

B.

La Ley Núm. 80, *supra.*, procura proteger a los empleados de cualquier industria, comercio o negocio en Puerto Rico de los efectos adversos de los despidos injustificados. A la vez que otorga unos remedios consubstanciales con los daños causados por un despido injustificado, busca desalentar la incidencia de este tipo de despido. 1976 *Leyes de Puerto Rico*, pág. 268. Así, la ley dota al empleado despedido sin justa causa del derecho a recibir de su patrono el sueldo correspondiente a entre dos y seis meses por concepto de indemnización y una

indemnización progresiva adicional equivalente a entre una y tres semanas por cada año de servicio. 29 L.P.R.A. sec. 185a; Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 D.P.R. 630, 642-643 (1994). Esta compensación pretende "brinda[r] a los trabajadores que han sido despedidos sin justa causa la oportunidad de disfrutar de una indemnización que les permita suplir sus necesidades básicas durante el tiempo que les pueda tomar conseguir un nuevo empleo". Díaz v. Wyndham Hotel Corp., 155 D.P.R. 364, 375 (2001).

Para ser acreedor a la protección y a los beneficios que ofrece la Ley Núm. 80, supra., el empleado separado de su cargo debe cumplir con los siguientes requisitos: (1) la existencia de una relación obrero-patrono en algún negocio, industria o sitio de empleo; (2) que la labor rendida sea remunerada; (3) que el trabajador haya sido contratado sin tiempo determinado;[1] (4) que el empleado haya sido despedido sin que medie justa causa. C. Zeno Santiago y otros, Tratado de Derecho del Trabajo, San Juan, Puerto Rico, Publicaciones JTS, 2003, Tomo I, pág. 98; Departamento del Trabajo y Recursos Humanos, Guía revisada para la aplicación de la Ley Núm. 80 de 30 de mayo de 1976,

---

[1] Aun en caso de que el empleado sí haya sido contratado por tiempo determinado, se entenderá que aplica la Ley Núm. 80, supra., si el contrato no cumple con los requisitos esbozados en la propia ley para considerarlo un contrato bona fide por término cierto o para un proyecto de obra cierta. Aplicaría también la Ley Núm. 80, supra., si hubiese evidencia en la contratación que apuntase a la creación de una expectativa razonable de continuidad en el empleo por tiempo determinado. 29 L.P.R.A. sec. 185a; Guía revisada para la aplicación de la Ley Núm. 80 de 30 de mayo de 1976, enmendada, 21 de septiembre de 2002, pág. 27-8.

enmendada, 21 de septiembre de 2000, pág. 27-8. Con respecto a las clases de empleados que están cobijados por la ley, ya hemos resuelto que, debido a que no limita el concepto de empleado, la Ley Núm. 80, *supra.*, es de aplicación a ejecutivos, administradores y profesionales. Hull Dobbs Co. v. Tribunal Superior, 82 D.P.R. 77, 84-5 (1961).

### C.

AEELA ha intentado distinguir la situación del recurrido de la de otros ejecutivos, amparándose en la envergadura del puesto de Director Ejecutivo en la estructura de la Asociación. Esto, con el objetivo de cuestionar el alcance de la norma que sentáramos hace cuarenta y cinco años en Hull Dobbs Co. v. Tribunal Superior, *supra*. Allí atendimos los despidos injustificados de un gerente de ventas y un administrador auxiliar. En el presente caso, según AEELA ha enfatizado, se trataba del oficial principal de la Asociación, quien ostentaba el poder sobre la gran mayoría de los asuntos internos de la organización, incluidos, como señaláramos anteriormente, lo concerniente a establecer el presupuesto operacional, a designar personal capacitado para cumplir con la política de la Asociación y a asegurarse de que se cumpliera con los reglamentos y convenios de ésta. Reglamento de AEELA, Art. 17.

No cabe duda de que las diferencias a las que alude AEELA son reales. Sin embargo, no encontramos en ellas un fundamento suficiente para apartarnos de una norma firmemente arraigada en nuestra jurisdicción. Por el contrario, continuamos convencidos de que dicha norma es correcta en estricto derecho y en justicia. Veamos.

Hull Dobbs fue resuelto cuando aún estaba vigente la anterior ley sobre despido injustificado, la Ley Núm. 50 de 20 de abril de 1949. En aquel momento nos fundamentamos en que la ley no establecía distinción alguna entre distintos tipos de empleados para condicionar su aplicación. Resolvimos que la ley amparaba a "todo empleado" y que no se habían excluido a los que ocupaban cargos ejecutivos. Ya que la legislación laboral, en caso de dudas, debe interpretarse de manera favorable al empleado, y que las excepciones deben surgir expresamente del texto de la ley, entendimos que en el caso particular de la ley sobre despidos injustificados el legislador quiso atender las necesidades de todos los empleados, **incluidos los ejecutivos**, pues si su intención hubiese sido otra así lo hubiese expuesto claramente en ella. Hull Dobbs Co. v. Tribunal Superior, *supra.*, pág. 85, citando Doyle v. Polypane Package Co., 80 D.P.R. 224, 228-31 (1958).

Quince años después de nuestra decisión en Hull Dobbs la Legislatura aprobó la Ley Núm. 80, *supra*. Con esta pieza legislativa derogó la ley anterior (la ley interpretada en Hull Dobbs), porque entendió que la protección que brindaba

a los trabajadores era inadecuada e ineficaz. 1976 *Leyes de Puerto Rico*, pág. 268. Sin embargo, independientemente de los cambios surgidos a raíz de la Ley Núm. 80, *supra*., la Legislatura mantuvo casi inalterado el texto que interpretáramos en Hull Dobbs. El único cambio en este renglón fue ampliar la protección a los empleados de entidades sin fines lucrativos, pues la ley anterior sólo cubría a los empleados de organizaciones lucrativas. De modo que, aun con la oportunidad de hacerlo, la Legislatura decidió no sustituir la interpretación que habíamos dado a la definición de empleado. **Se desprende, entonces, que la intención legislativa al redactar la nueva ley fue que ésta cobijara a los empleados a nivel ejecutivo**, tal como lo interpretamos en Hull Dobbs.

Por otro lado, AEELA no nos ha convencido de que el puesto de Director Ejecutivo aquí en cuestión no es merecedor de protección social. Es cierto que, por razón del tipo de puesto que ocupaba y las labores a las que se dedicaba, el recurrido no era el trabajador típico para el cual nuestro ordenamiento laboral demanda especial consideración. Sin embargo, la mera diferencia en labores o remuneración no es motivo suficiente para despojar a un empleado de los beneficios de la Ley Núm. 80, *supra*. Según hemos expresado antes, las prácticas que la ley pretende desalentar no conocen gradación por causa del tipo de empleado del que se trate. Este resultado ha sido avalado por la propia Legislatura. Cualquier despido injustificado

de cualquier empleado es reprochable. El mero hecho de tener un puesto de mayor responsabilidad en los asuntos de la empresa concernida no libra al empleado de nivel ejecutivo de padecer las graves vicisitudes por motivo de un despido injustificado que padecen otros tipos de trabajadores. En lo esencial, ser despedido sin justa causa para ello tiene efectos morales, económicos, sociales y jurídicos comparables para todos los empleados. Unos y otros requieren una indemnización que les permita atender sus necesidades básicas y las de sus familias durante el tiempo que les pueda tomar conseguir un nuevo empleo. **Nos parece claro, por tanto, que las disposiciones de la Ley Núm. 80, *supra*., cobijan a todos los empleados, inclusive los empleados ejecutivos en puestos a nivel de oficial principal de una entidad**.

### III

Resta determinar si, ante el poder que ostenta la Junta de Directores de AEELA de nombrar al Director Ejecutivo de la Asociación, un cambio en la composición de la Junta constituye justa causa para el despido de este funcionario.

AEELA arguye que la elección de una nueva Junta de Directores debe ser motivo fundado para la separación del Director Ejecutivo de la Asociación pues el poder de nombrar tiene como consecuencia el poder de destituir. Razona que es lógico que una Junta de Directores desconfíe

del Director Ejecutivo nombrado por la Junta anterior, y que sería demasiado gravoso para la Asociación sólo poder despedir a este funcionario cuando medie una de las circunstancias esbozadas en la Ley Núm. 80, *supra*. Por tal razón, AEELA nos invita a que consideremos como justa causa para el despido de empleados ejecutivos al nivel del Director Ejecutivo de la Asociación (oficial principal) el cambio en la composición de la Junta de Directores (el organismo directivo) y el deseo de ésta de nombrar al puesto a alguien que se identifique con sus planes y política. A los efectos de ilustrar su argumento, AEELA se compara a sí misma con corporaciones complejas y lucrativas y nos invita a que la consideremos como tal a fin de entender la importancia que tiene que el Director Ejecutivo, como oficial principal de la entidad encargado de asegurar el cumplimiento con las obligaciones y propósitos asumidos por la Junta de Directores, sea de la total confianza de ésta. Consideremos el asunto por partes.

A.

El artículo 2 de la Ley Núm. 80, *supra.*, define las instancias en las que se considerará que una razón para el despido constituye justa causa. Expone la ley:

Se entenderá como justa causa para el despido de un empleado de un establecimiento:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de

hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o se maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en el empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

No se considerará despido por justa causa aquél que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. 29 L.P.R.A. sec. 185b.

Aunque hemos señalado que las situaciones delineadas en la ley no representan una lista taxativa de las circunstancias que constituyen justa causa para el despido, Báez García v. Cooper Labs., Inc., 120 D.P.R. 145, 152 (1987), debemos tener presente que:

**[l]a discreción de los administradores de la ley y de los tribunales en la determinación de lo que constituye justa causa debe necesariamente partir de la especificación contenida en la ley y la discreción podrá ejercerse solamente en aquellos aspectos relativos a grados o matices,**

> que por la misma naturaleza y limitaciones del
> proceso legislativo no son susceptibles de ser
> abarcados exhaustivamente por un estatuto. *Guía
> revisada para la aplicación de la Ley Núm. 80,
> supra.*, pág. 31 (énfasis suplido).

De modo que la ley limita nuestra discreción al momento de determinar si una situación particular, más allá de las particularizadas en la ley, constituye justa causa para el despido. Sólo podemos apartarnos de lo especificado en la ley para acoger **"grados o matices"** de las causas que ésta menciona expresamente.

Cónsono con lo anterior, hemos establecido ya que la mera falta de confianza en un empleado no es razón justificada para su despido. Belk v. Martínez, 146 D.P.R. 215, 236 (1998); Wolf v. Neckwear Corporation, 80 D.P.R. 537, 541 (1958). En Wolf expresamos nuestra preocupación con que la falta de confianza por sí sola constituyera justa causa para el despido y concluimos que si así fuese "prácticamente sería ilusoria la protección que concede la disposición legal sobre mesada". Wolf v. Neckwear Corporation, *supra.*, pág. 541. De igual forma, y citando a Wolf, en Belk advertimos que:

> [l]a falta de confianza, como justificación
> válida para el despido, no puede tratarse del
> *"mero sentimiento subjetivo del patrono"*. Éste
> deberá demostrar que el empleado faltó a sus
> deberes "violando reglas u órdenes del patrono,
> demostrando negligencia, ineptitud o
> ineficiencia en su trabajo o incurriendo en
> fraude, deslealtad grave o en faltas de
> honradez, etc.". Sólo ante estos hechos
> objetivos es que la falta de confianza podría
> ser una justificación razonable para el despido.
> Belk v. Martínez, *supra.*, pág. 236-7. (Énfasis
> en el original.)

Así, **la falta de confianza debe estar sustentada o acompañada por elementos objetivos que permitan al juzgador identificar su legitimidad como razón para el despido**.

B.

También hemos resuelto ya, como norma general que quien posee el poder de nombramiento a un puesto debe poseer asimismo el poder de destitución. Domenech, Tesorero v. Corte, 48 D.P.R. 542, 547 (1935). En Domenech, *supra.,* expresamos que "el poder general de nombrar lleva consigo, como una incidencia, la facultad de destituir 'en ausencia de una disposición estatutaria que disponga lo contrario'". Domenech, Tesorero v. Corte, *supra.,* pág. 547. Esta norma, que adoptamos del derecho común estadounidense, aplica tanto a funcionarios como a empleados de entidades privadas. Ver Burnap v. United Status, 252 U.S. 512, 515 (1920); W.M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations,* Ed. Rev. 2006 (C.A. Jones), Thomson-West, Vol. 2, Sec. 357 (2006); H.L. Oleck, *Nonprofit Corporations, Organizations, and Associations,* 4ta Edición, New Jersey, Prentice-Hall, Inc., 1980, pág. 605.

En cuanto a las entidades corporativas como tal, el profesor Díaz Olivo explica que: "[l]os oficiales sirven a discreción del organismo directivo que los designó y pueden ser removidos en cualquier momento con o sin justa causa para ello...". C. Díaz Olivo, *Corporaciones,* San Juan, Puerto Rico, Publicaciones Puertorriqueñas, 1999, pág. 92-3. Sin embargo, es menester aclarar que el reconocimiento

de que la facultad para nombrar apareja de ordinario la facultad de despedir en nada se refiere al asunto del despido **injustificado**. Es decir, la facultad implícita de despedir no legitima *per se* el despido injustificado. *"The right to remove an officer with or without cause is without prejudice to the officer's right to recover damages for wrongful removal"*. Fletcher, *op cit*., Vol. 2, Sec. 352 (2006). Así, según la doctrina, aun cuando los organismos directivos pueden destituir a los oficiales principales en cualquier momento, como corolario del poder de nombramiento, si la destitución es sin justa causa o en violación a los acuerdos asumidos entre las partes, habrá que cumplir con los preceptos legales o contractuales que procedan. *Id*.

El mismo razonamiento debe aplicar a otras entidades privadas, aunque no hayan asumido el modelo corporativo. No puede ser de otra forma. El que un funcionario o entidad tenga la potestad de destituir no significa que sus actuaciones están por encima de la ley o que pueda hacerlo a su mero antojo. Puede destituir, pero si el despido es sin justa causa, tendrá que cumplir con las disposiciones de la Ley Núm. 80, *supra*., es decir, tendrá que pagar la mesada. Lo contrario sería una forma fácil de soslayar la aplicación de la Ley Núm. 80, *supra*., práctica que, al igual que el legislador, debemos desalentar. *Ver*: *Leyes de Puerto Rico, supra,* pág. 268; Wolf v. Neckwear Corporation, *supra*., pág. 541.

**Es menester concluir, por tanto, que la facultad de destituir como función de la facultad de nombramiento no exime del cumplimiento con las disposiciones de la Ley Núm. 80, *supra*.**

Apliquemos lo anterior a los hechos particulares del caso ante nuestra consideración.

C.

AEELA insiste en que el cambio en la composición de la Junta de Directores debe constituir justa causa para el despido del recurrido, pues la nueva Junta desconfiaba de éste. AEELA, no aduce otra razón para la desconfianza que siente hacia el recurrido más allá del mero hecho de que éste fue nombrado por la Junta destituida. Es decir, AEELA no nos ofrece hechos concretos para justificar su desconfianza. No podemos aceptar el razonamiento de AEELA. Según se ha resuelto antes, la falta de confianza sin hechos objetivos que la fundamenten no constituye justa causa para el despido bajo las disposiciones de la Ley Núm. 80, *supra*. Wolf v. Neckwear Corporation, *supra*.; Belk v. Martínez, *supra*.

Además, a tenor con las recomendaciones de la Guía revisada para la aplicación de la Ley Núm. 80, *supra*., debemos mantener presente que la determinación de qué circunstancias constituyen justa causa para el despido es cuestión de "grados o matices". Guía revisada para la aplicación de la Ley Núm. 80, *supra*., pág. 31. La

circunstancia que AEELA propone no surge del catálogo que provee la Ley Núm. 80, *supra*., ni es una simple extensión de éste, sino que es un escenario completamente distinto a los contemplados en la ley. **Por tal razón, no estamos autorizados a añadir el cambio de composición en el organismo directivo de una entidad privada como una ocurrencia de justa causa para el despido de un oficial ejecutivo.**

En cuanto a la facultad de nombrar como fundamento para destituir, no albergamos dudas en cuanto a que, según surge claramente de la Ley de AEELA, *supra*., y sus reglamentos, la Junta de Directores disfruta del poder de nombramiento del Director Ejecutivo. Tampoco dudamos que, como corolario de tal facultad y al amparo de <u>Domenech</u>, la Junta de Directores puede asimismo destituirlo para nombrar a alguien distinto al puesto. Ello no obstante, según establecimos en la sección anterior, no significa que la Junta de Directores ostente el poder de destituir al Director Ejecutivo de su puesto sin tener que cumplir con las disposiciones de la Ley Núm. 80. **Por tanto, la facultad de la Junta de Directores para nombrar al Director Ejecutivo no releva a AEELA de su obligación de pagar la mesada al recurrido, pues no medió justa causa en el despido**.

Por último, y en ánimo de atender todos los argumentos de AEELA, ésta tampoco nos ha persuadido con su tesis sobre la limitación que representaría para el buen funcionamiento

de la Asociación el sólo poder separar al Director Ejecutivo de su puesto cuando medie justa causa para ello. La preocupación de AEELA podría ser válida, pero, como tal, debió haber sido atendida en sus reglamentos sobre el funcionamiento interno de la organización y el personal o en el contrato de empleo particular del funcionario en cuestión. Nada en nuestro ordenamiento prohíbe que una institución como AEELA limite la cantidad de años que la persona designada para ocupar el cargo de oficial principal podrá permanecer en el puesto. De modo que, si AEELA quería garantizar que la Junta de Directores entrante tuviese el beneficio de nombrar a un Director Ejecutivo de su entera confianza, así debió haberlo estipulado en el contrato del recurrido o en alguno de sus reglamentos.

Además, las disposiciones del la Ley Núm. 80, *supra*., no deben entenderse como una limitación absoluta a las facultades de AEELA o de entidades similares ya que no establecen prohibiciones, sino que establecen consecuencias para determinadas actuaciones.[2] Ya antes hemos subrayado que:

> el estatuto en cuestión *no* proscribe la acción del despido. [...] Dicho curso de acción como tal se reconoce como una facultad o derecho que ostenta todo patrono en una sociedad moderna que se desarrolla y desenvuelve alrededor y a base de las fuerzas del libre mercado y del derecho de propiedad o de dirección empresarial. La

---

[2] Según la Exposición de Motivos, ya citada, el propósito de la Ley Núm. 80, *supra*., es proveer **"remedios más justicieros y consubstanciales con los daños causados por el despido injustificado"** para así desalentar este tipo de actuación. 1976 *Leyes de Puerto Rico,* pág. 268 (énfasis añadido).

disposición legislativa en controversia lo que le concede a la persona despedida injustificadamente es una compensación dirigida a ayudarlo económicamente durante la etapa de transición del empleo que ocupaba al que pueda en un futuro conseguir. De ahí entonces que la propia Ley Núm. 80 enumere y defina las circunstancias que envuelven o se consideren justa causa, esto con el propósito de determinar cuándo el patrono puede ejercer dicha prerrogativa sin tan siquiera tener que satisfacer la mencionada compensación, o mesada. Díaz v. Wyndham Hotel Corp., *supra*., pág. 377.

IV

Por los fundamentos que anteceden, es evidente que la Ley Núm. 80, *supra*., protege a los empleados ejecutivos a nivel de oficiales principales que son despedidos de su empleo sin justa causa. Es evidente, además, que el cambio en la composición de los organismos directivos no constituye justa causa para el despido bajo las disposiciones de la Ley Núm. 80, *supra*. En consecuencia, procede que se confirme al Tribunal de Apelaciones, pues el recurrido, ex Director Ejecutivo de la Asociación, tiene derecho al pago de la mesada que dispone la Ley Núm. 80, *supra*.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo García Burgos

      Recurrido

        v.                   CC-2005-185

Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

      Peticionario

Opinión de Conformidad emitida por el Juez Asociado Señor Rivera PéreZ

San Juan, Puerto Rico, a 20 de febrero de 2007.

El caso de autos nos brinda la oportunidad de resolver si el Director Ejecutivo de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico tiene derecho a la indemnización por despido injustificado, comúnmente conocida como la mesada. Por los fundamentos que exponemos a continuación, opinamos que sí.

I

Los hechos del caso, según elaborados en la Opinión de Conformidad del Juez Asociado señor Fuster Berlingeri, encuentran apoyo en el expediente

del Tribunal, por lo que no hay necesidad de repetirlos aquí.

II

A

La Asociación de Empleados del Estado Libre Asociado de Puerto Rico, en lo sucesivo AEELA, es una institución de creación estatutaria, cuya membresía es de carácter compulsoria para todos los empleados y funcionarios públicos del Gobierno de Puerto Rico.[3] Fue creada originalmente por virtud de la Ley Núm. 52 de 11 de julio de 1921[4], y hoy existe por virtud de la Ley Núm. 133 de 28 de junio de 1966, según enmendada.[5] La propia ley nos explica sus propósitos:

> Estimular el ahorro entre los empleados y los socios acogidos pensionados, establecer planes de seguros incluyendo un seguro por muerte, efectuar préstamos, proveer a los empleados y a los socios acogidos pensionados hogares y facilidades hospitalarias para el tratamiento médico de ellos y sus familiares y cualquier otra actividad que la Junta de Directores, previo estudio, considere factible y provechosa a las finalidades que se persiguen, y propender por todos los medios y recursos a su alcance el mejoramiento y progreso individual y colectivo de los empleados y socios acogidos pensionados que la integran en el orden económico, moral y físico. La Asociación conservará su personalidad jurídica y capacidad para demandar y ser demandada.[6]

Hemos resuelto que AEELA no constituye una agencia, tampoco un departamento, instrumentalizad o corporación

---

[3] 3 L.P.R.A. sec. 862c; Asoc. de Empleados del E.L.A. v. Vázquez, 130 D.P.R. 407, 427 (1992); First Federal v. Srio. de Hacienda, 86 D.P.R. 56, 70 (1962).

[4] 3 L.P.R.A. ant. secs. 831–859a.

[5] 3 L.P.R.A. secs. 862–863n.

[6] Íd., sec. 862b.

pública del Gobierno.[7] Inclusive, hemos resuelto que "[l]a Asociación no recibe ayuda económica alguna del Gobierno de Puerto Rico **y funciona de manera muy parecida a una cooperativa de ahorro y crédito**" (énfasis nuestro).[8]

Cónsono con lo anterior, hemos resuelto que <u>**los empleados de la Asociación**</u> "no están cubiertos por la Ley de **Personal del Servicio Público de Puerto Rico**, Ley Núm. 5 de 14 de octubre de 1975" (énfasis suplido).[9]

Si hemos resuelto que AEELA **no** es una agencia gubernamental, **ni** una corporación *cuasi* pública; y si por el contrario, hemos resuelto que es una entidad que funciona como una cooperativa de ahorro y crédito, y que sus empleados **no** están cubiertos por la legislación laboral aplicable al sector de empleo público, entonces, por eliminación, **les tiene que cobijar la legislación laboral aplicable al sector de empleo no gubernamental, incluida ahí la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como Ley de Indemnización por Despido Injustificado, *infra***. No puede ser de otra manera, pues los empleados de AEELA no están en un

---

[7] <u>Asoc. de Empleados del E.L.A. v. Vázquez</u>, *supra*, pág. 429.

[8] <u>Asoc. de Empleados del E.L.A. v. Vázquez</u>, *supra*, pág. 428. Así se expresó, además, el entonces Juez Asociado y hoy Juez Presidente señor Hernández Denton en la Opinión Concurrente y de Conformidad que emitió en ese caso: [AEELA] "realmente funciona como una cooperativa de ahorro y crédito". Íd., pág. 432.

[9] <u>Asoc. de Empleados del E.L.A. v. Vázquez</u>, *supra*, pág. 427. La Ley de Personal del Servicio Público de Puerto Rico fue derogada y sustituida por la vigente Ley para la Administración de los Recursos Humanos del Estado Libre Asociado de Puerto Rico de 2004, *infra*.

limbo jurídico en términos de reglamentación del trabajo y protección laboral.

Si decimos ahora que AEELA "es una entidad que goza[] parcialmente de rasgos que caracterizan al empleo público" o que "su naturaleza y funcionamiento se asemeja más al de una entidad *cuasi* pública", estaríamos contradiciéndonos o, al menos, llevando un mensaje confuso. Por la misma razón, no podemos expresar que "no se puede presumir que las disposiciones de la Ley Núm. 80, […], son oponibles ante la Asociación".

Tenemos el deber de resolver las controversias traídas ante nuestra consideración pautando armoniosas normas de derecho.

La legislación protectora del trabajo abarca múltiples beneficios y garantías **para los empleados no gubernamentales.** No sólo una protección contra el despido injustificado, llamada "mesada". Dicha legislación, cubre toda una gama de garantías y beneficios de licencias de vacaciones, enfermedad, maternidad, licencias especiales, bono de Navidad, compensación por horas extras, periodos de descansos para tomar alimentos, prohibiciones contra discrímenes en el empleo, entre otros.

Si hemos resuelto que la legislación laboral aplicable al sector de empleo público no protege a los empleados de AEELA, pero hoy decimos que la Ley de Indemnización por Despido Injustificado, *infra*, no ampara a esos mismos empleados, ¿qué mensaje estamos llevando? ¿Y qué de los

otros beneficios y garantías que contiene la legislación protectora del trabajo? ¿Tampoco les aplica a los empleados de AEELA? ¿Qué les aplica entonces? ¿Será exclusivamente el reglamento de personal o manual de empleados que cree **internamente** AEELA? Cuidado, la ley habilitadora de AEELA no la obliga a crearlos. ¿Y si no creara ninguno? ¿Y si en él recorta las garantías que la legislación protectora del trabajo dispone para los empleados no gubernamentales? ¿Y si en él establece beneficios menores a los dispuestos en esa legislación?

Tenemos que ser claros. O AEELA pertenece al mundo de los vivos o pertenece al mundo de los muertos. No hay intermedios. Por tanto, si está resuelto que los empleados de AEELA no son empleados públicos, entonces están protegidos por la legislación protectora del trabajo aplicable al sector de empleo no gubernamental.

Por otro lado, entre los poderes que la ley habilitadora de AEELA confirió a su Junta de Directores está el siguiente:

> ........
> (p) **Nombrar un Director Ejecutivo y fijarle su sueldo".** El Director Ejecutivo será el funcionario ejecutivo de la Asociación y cumplirá con los deberes que la Junta de Directores le asigne y prestará la fianza que la Junta de Directores estime conveniente para el fiel cumplimiento de sus deberes (énfasis suplido).[10]

**Con relación a la contratación del Director Ejecutivo de AEELA, la ley no añade más.**

B

---

[10] 3 L.P.R.A. sec. 862f(p).

**A la fecha en que se produjo el despido** del recurrido señor García Burgos como Director Ejecutivo de AEELA, la Ley de Indemnización por Despido Injustificado de Puerto Rico, Ley Núm. 80 de 30 de mayo de 1976, según enmendada[11], en adelante Ley 80, **disponía** que "**todo empleado** de comercio, industria o cualquier otro negocio **o sitio de empleo**", "**contratado sin tiempo determinado**", que fuere despedido de su cargo sin mediar justa causa, tenía derecho a recibir de su patrono **entre uno (1) y tres (3) meses de sueldo por concepto de indemnización, dependiendo de sus años de servicio, más de una indemnización progresiva adicional equivalente a una (1) semana por cada año de servicio.**[12]

Aclaramos que el 7 de octubre de 2005, la Legislatura aprobó la Ley Núm. 128 para enmendar la Ley 80 y aumentar significativamente el remedio económico provisto por la misma.[13] Entendemos que ésta es inaplicable al presente

---

[11] 29 L.P.R.A. sec. 185a *et seq.*

[12] 29 L.P.R.A. sec. 185a.

[13] Nos referimos a la Ley Núm. 128 de 7 de octubre de 2005. Por medio de ella, la Asamblea Legislativa dispuso que, a partir de esa fecha, la indemnización por despido injustificado es la siguiente:

(a)     el sueldo correspondiente a **dos (2) meses** por concepto de indemnización, si el despido ocurre dentro de los primeros cinco (5) años de servicio; el sueldo correspondiente a **tres (3) meses** si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; el sueldo correspondiente a **seis (6) meses** si el despido ocurre luego de los quince (15) años de servicio;

caso, pues el despido definitivo del recurrido se efectuó el 22 de diciembre de 1997, ocho (8) años antes de aprobarse la referida enmienda.[14]

Por otro lado, la Ley 80 no define el término "despido injustificado", pero, según nos comenta el tratadista Ruy N. Delgado Zayas, establece normas y guías orientadoras a esos efectos.[15]

Las aludidas normas y guías orientadoras, comúnmente conocidas como las causales de despido, las encontramos en el artículo 2 de la Ley 80, a saber:

> (a) Que el obrero siga un patrón de conducta impropia o desordenada.
>
> (b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

---

(b)

> (b) una indemnización progresiva adicional equivalente a una **(1) semana** por cada año de servicio, si el despido ocurre dentro de los primeros cinco (5) años de servicio; **dos (2) semanas** por cada año de servicio, si el despido ocurre luego de los cinco (5) años hasta los quince (15) años de servicio; tres **(3) semanas** por cada año de servicio, luego de haber completado quince (15) años o más de servicio (énfasis nuestro).

[14] Nótese que la ley no dispone expresamente su efecto retroactivo. Tampoco se desprende ni remotamente esa intención de su exposición de motivos. Además, el artículo 3 del Código Civil consagra lo siguiente:
"[l]as leyes no tendrán efecto retroactivo, si no dispusieren expresamente lo contrario. En ningún caso podrá el efecto retroactivo de una ley perjudicar los derechos adquiridos al amparo de una legislación anterior". 31 L.P.R.A. sec. 4.

[15] R. N. Delgado Zayas, <u>Apuntes para el estudio de la Legislación protectora del trabajo en el derecho laboral puertorriqueño</u>, San Juan, Revisión 2005, pág. 134.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.[16]

Es importante destacar que, a renglón seguido, el referido artículo expone el principio rector de todo análisis del concepto y del proceso determinativo de lo que constituye "justa causa" para despedir, y citamos: "no se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento".[17]   Cónsono con lo anterior, hemos resuelto lo siguiente:

> [l]a ley establece, aunque **de forma general**, lo que constituye justa causa para el despido. Concluimos, que el principio rector que gobierna el despido por justa causa dispuesto en el Art. 2 de la Ley Núm. 80, *supra*, es aquel que delimita las circunstancias en que éste se produce; es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. **La lista de ejemplos que contiene el referido estatuto persigue ilustrarnos y orientarnos en una forma no exhaustiva** sobre el tipo de conducta que constituye razón y motivo justificado para el despido, por estar reñido con la ordenada marcha

---

[16] 29 L.P.R.A. sec. 185b.

[17] Íd.

y normal funcionamiento de una empresa. Sin embargo, **tal desglose no excluye otra conducta del empleado que, por estar vinculada al buen funcionamiento de la empresa, podría constituir justa causa para el despido. Tal lista no es taxativa** (énfasis nuestro y énfasis suprimido en el original).[18]

Dicho de otra forma, el concepto "justa causa" no constituye un "catálogo" restrictivo de circunstancias u ocurrencias detalladas en la ley. Más bien, es un concepto dinámico, que se nutre de múltiples y fluidas situaciones imposibles de prever.[19]

De otra parte, la Ley 80 tiene como propósito claro y definido proteger la tenencia del empleo y desalentar la incidencia de los despidos injustificados.[20] **Con ese objetivo, se hizo extensiva a "todo empleado", sin excepción.**[21] Cónsono con lo anterior, hemos resuelto que la legislación contra el despido injustificado, protege lo mismo a empleados no exentos, como a los denominados exentos, entre ellos, **los ejecutivos**, administradores y profesionales.[22]

Expuesta la normativa jurídico laboral vigente, procedemos a aplicarla a los hechos particulares del caso de marras.

---

[18] Srio. del Trabajo v. G.P. Industries, 153 D.P.R. 223, 244 (2001).

[19] Íd., pág. 243.

[20] R. N. Delgado Zayas, *op cit*, págs. 123 y 133.

[21] Refiérase nuevamente a 29 L.P.R.A. sec. 185a. Además, véase R. N. Delgado Zayas, *op cit*, pág. 123.

[22] Hull Dobbs Co. v. Tribunal Superior, 82 D.P.R. 77, 84-85 (1961).

C

AEELA plantea que el reglamento de personal de la entidad no incluye (o no considera) el puesto de Director Ejecutivo, a pesar de cubrir a todos sus empleados no unionados. Aduce que ello obedece a que el Director Ejecutivo es el ejecutivo de más alto rango en la institución. Sostiene que al no haber reglamentación que gobierne la contratación de tan alto funcionario, y estando la Junta de Directores facultada por su ley habilitadora **para reclutarlo**, podía despedirlo a su exclusiva voluntad.[23] Basa su contención en nuestras expresiones en Domenech, Tesorero v. Corte[24], a los efectos de que aquel en quien reside la facultad de nombrar posee, incidentalmente, la de destituir, salvo disposición legal en contrario.[25] Plantea que el caso de autos no trata de una cuestión de ineptitud o ineficiencia en el empleo por parte del Director Ejecutivo despedido, sino del legítimo ejercicio de una facultad legal irrestricta de prescindir de los servicios de una "persona previamente designada y ratificada por una Junta anterior".[26] No le asiste la razón a AEELA.

Si el reglamento de personal de AEELA no cubre el puesto de Director Ejecutivo, es porque ella así lo decidió. **El**

---

[23] Alegato de la parte peticionaria, págs. 6-7.

[24] 48 D.P.R. 542 (1935).

[25] Alegato de la parte peticionaria, pág. 7.

[26] Íd., págs. 10-11.

**referido reglamento es un documento interno de la institución sobre cuya confección tiene discreción.** Por tal razón, muy bien podía AEELA incluir el puesto en cuestión como no incluirlo.

En última instancia, el hecho de que AEELA no haya incluido en su reglamento de personal el puesto de Director Ejecutivo no implica que éste no goce de la protección que la legislación del trabajo aplicable al sector de empleo no gubernamental pueda ofrecerle. Un patrono carece de autoridad para despojar a un empleado vía la adopción de reglamentos de personal, manuales de empleados, u otra forma, de las protecciones y beneficios mínimos laborales que el Estado le provee. En el caso específico de la indemnización por despido injustificado, precisa destacar que el legislador expresamente la declaró irrenunciable.[27]

De otra parte, nuestras expresiones en Domenech, Tesorero v. Corte, *supra*, a los efectos de que aquel en quien reside la facultad de nombrar también posee facultad implícita de destituir, en ausencia de disposición estatutaria que disponga lo contrario[28], no es de aplicación al escenario laboral en que está inmerso el presente caso ni tiene el alcance que AEELA le atribuye.

---

[27] 29 L.P.R.A. sec. 185i.

[28] Domenech, Tesorero v. Corte, *supra*, págs. 547-548.

Domenech, Tesorero fue un caso resuelto dentro del particular escenario laboral del servicio público.[29] No obstante, según hemos visto, el caso que nos ocupa está gobernado por la legislación laboral aplicable al sector de empleo no gubernamental. Lo más apropiado y exacto, entonces, es evaluar el planteamiento de AEELA mediante el uso de normas jurídicas desarrolladas dentro del contexto del campo laboral no gubernamental.

En correcta y precisa juridicidad, debemos aclarar que la norma legal de rigor, aplicable a dicho campo laboral establece que, como regla general, a tenor con su derecho de libre administración, un patrono puede despedir a un empleado contratado sin tiempo determinado, en cualquier momento, con justa causa, sin causa justificada o sin causa, con la única limitación que si lo hace sin causa justificada, vendrá obligado, ante el reclamo del ex empleado perjudicado, a indemnizarle con la compensación por despido injustificado que dispone la Ley 80.[30] Por tanto, la Junta de Directores de AEELA, patrono del recurrido señor García Burgos, tenía la

---

[29] Véase, específicamente, Domenech, Tesorero v. Corte, *supra*, pág. 549.

[30] Arroyo v. Rattan Specialties, Inc., 117 D.P.R. 35, 65 (1986). Véase, además, A. Acevedo Colom, Legislación protectora del trabajo comentada, 7ma ed, San Juan, 2001, págs. 137 y 179-180. También, R. N. Delgado Zayas, *op cit*, pág. 115. Se aclara que, como excepción, si el despido injustificado es, a su vez, discriminatorio, o lesivo de derechos constitucionales, o violatorio de reservas de empleo contempladas por leyes especiales que prohíben el despido mientras se está en el uso de determinadas licencias, el patrono podría ser condenado a reponer en el empleo al trabajador perjudicado y a pagarle los daños y perjuicios que le haya ocasionado.

facultad de despedirlo en cualquier momento. No obstante, si lo hacía injustificadamente, de ser éste un empleado cobijado por las disposiciones de la Ley 80, AEELA quedaba sujeta a pagarle el remedio económico de la indemnización por despido injustificado.

Es decir, el hecho de que la Junta de Directores de AEELA tenga autoridad para despedir a su Director Ejecutivo, no necesariamente implica que dicha actuación esté libre de **consecuencias**. Una cosa es su innegable facultad para despedirlo y otra la **responsabilidad indemnizatoria** que pudiera generar su ejercicio. Una simple lectura de la ley habilitadora de AEELA demuestra que en ningún momento le exime de responderle a su Director Ejecutivo por incumplimiento de su contrato individual de trabajo, si hubiere alguno, y ese fuese el caso, o de responderle en caso de despedirlo sin observar las disposiciones de la legislación especial que gobierna el despido injustificado en Puerto Rico, la Ley 80.

Ahora bien, AEELA, luego de hacer hincapié en la envergadura de las funciones que ejercía el recurrido como Director Ejecutivo, e ilustrarnos sobre su estructura y complejidad operacional y organizativa, nos invita a resolver que éste no está amparado por la Ley 80, por no pertenecer a la masa trabajadora del país que dicha ley persigue proteger.[31] En la alternativa, nos solicita que determinemos que un cambio en la Junta de Directores de la entidad

---

[31] Alegato de la parte peticionaria, págs. 17-18.

constituye justa causa para su despido. No podemos acceder a lo solicitado.

Como vimos antes, la Ley 80 protege a **"todo empleado** de comercio, industria o cualquier otro negocio o **sitio de empleo"**, **"contratado sin tiempo determinado"**. Es decir, **su lenguaje es uno absolutamente inclusivo. Todo tipo de patrono no gubernamental está regido por sus disposiciones, <u>independientemente de si opera con o sin fines de lucro</u>. Asimismo, todo tipo de empleado no gubernamental está protegido por la Ley 80, en la medida en que haya sido contratado por tiempo indeterminado.**

Es un hecho incontrovertido que el recurrido fue, precisamente, un empleado contratado por tiempo indeterminado. Recordemos que AEELA lo empleó, inicialmente, en el año 1993, como Director de Finanzas. Y que, cerca de cuatro (4) años después, el 12 de febrero de 1997, fue nombrado Director Ejecutivo por su Junta de Directores, también por tiempo indefinido.[32]

---

[32] AEELA acepta en la pág. 8 de su alegato que "<u>el contrato del recurrido era sin tiempo determinado</u>". Pero, ello trasluce más elocuentemente de la carta que la Asociación le dirigió al señor García Burgos en ocasión de su contratación. Esta lee:

> Estimado señor García Burgos:
>
> Me place notificarle que la Junta de Directores en su reunión ordinaria del 12 de enero de 1997, aprobó su nombramiento como Director Ejecutivo de la Asociación de Empleados del E.L.A.
>
> Dicho nombramiento es efectivo en la referida fecha. Se le asignó un salario anual de $75,000. Tendrá derecho, además, a todos los beneficios

AEELA no se apoya en autoridad alguna que sostenga su contención de que por ser el recurrido el funcionario ejecutivo de más alto rango y mayor responsabilidad dentro de la organización, no merece protección contra el despido injustificado. Por el contrario, la Ley 80 y nuestra jurisprudencia apoya otro resultado. En Hull Dobbs Co. v. Tribunal Superior, caso incoado por un gerente de ventas y un administrador empresarial, resolvimos, específicamente, que la legislación contra el despido injustificado extendía sus beneficios a **"todo empleado", sin hacer distinción alguna, por lo que cobijaba a los empleados ejecutivos.**[33]

En consecuencia, somos de opinión que el cesanteado Director Ejecutivo de AEELA está protegido por la Ley 80. Esta conclusión es cónsona con la trillada norma jurídica que establece que la exclusión de un empleado de los beneficios reconocidos en la legislación laboral debe ser clara e interpretarse restrictivamente.[34]

Por otro lado, AEELA tampoco se apoya en autoridad o fundamento alguno para sostener su planteamiento alternativo de que un cambio en la Junta de Directores de la institución constituye *per se* causa justificada para despedir a su Director Ejecutivo. AEELA no enmarca el despido del señor

---

marginales que disfrutan los empleados gerenciales. Apéndice del recurso de *Certiorari*, pág. 72.

[33] 82 D.P.R. 77, 84 (1961).

[34] Freire v. Vista Rent to Own, Inc., 2006 T.S.P.R. 162, 2006 J.T.S. 172, 169 D.P.R. __ (2006); Malavé v. Oriental, 2006 T.S.P.R. 63, 2006 J.T.S. 72, 167 D.P.R. __ (2006); Rolón v. Charlie Car Rental, 148 D.P.R. 420 (1999); López Santos v. Tribunal Superior, 99 D.P.R. 325 (1970).

García Burgos en conducta impropia o desordenada, tampoco en incompetencia, ineficiencia, negligencia o violación a las normas de manejo y administración de la entidad, mucho menos en una violación de los reglamentos o manuales de procedimientos establecidos por su Junta de Directores. Tampoco lo atribuye a razón alguna vinculada al buen y normal funcionamiento de la institución. Esta evaluación nos lleva forzosamente a opinar que, a la luz de las disposiciones de la Ley 80 y su jurisprudencia interpretativa, el despido del recurrido, motivado únicamente por el mero cambio de composición de la Junta de Directores de AEELA, fue injustificado.

La Junta de Directores de AEELA despidió al señor García Burgos, nombrado en el puesto de Director Ejecutivo por una Junta anterior, porque no gozaba de su confianza. Ello es evidente. Durante todo su alegato, AEELA se esfuerza en un intento de persuadirnos para que concluyamos que el señor García Burgos era un empleado de confianza similar a un secretario de agencia gubernamental, y por ende, era un empleado de libre selección y remoción. Con ello, pretende librarse de las disposiciones de la Ley 80.

Debemos puntualizar que, si bien es cierto que en el sector de empleo público, específicamente bajo la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, Ley Núm. 184 de 3 de agosto de 2004, según enmendada[35], sustituta de la

---

[35] 3 L.P.R.A. secs. 1461-1468p.

anterior Ley de Personal del Servicio Público de Puerto Rico de 1975, existe la clasificación de "empleados de confianza", en ella descritos como **empleados de libre selección y remoción**[36], tal clasificación, según es concebida por dicha ley, es inexistente en el sector de empleo no gubernamental.

Un examen de la ley habilitadora de AEELA refleja que no contiene tal clasificación de empleados. A igual resultado llegamos al estudiar la Ley 80. Tampoco conocemos ley alguna aplicable al campo de empleo no gubernamental que incluya una clasificación de "empleados de confianza", mucho menos con el alcance que ésta tiene bajo la Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico, *supra*.

Por otro lado, la inexistencia de dicha clasificación de empleado en el sector de empleo no gubernamental está avalada por la norma jurídica que sentamos en Wolf v. Neckwear[37], y reiteramos en Belk v. Martínez[38], casos decididos bajo la

---

[36] Véase su artículo 9, sección 9.1, 3 L.P.R.A. sec. 1465(2). Adviértase que dicha clasificación también existía bajo la anterior Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. ant. sec. 1350. Con relación al alcance de la referida clasificación de empleados, véase lo resuelto en McCrillis v. Aut. Navieras, 123 D.P.R. 113, 132 (1989). Se aclara que la condición de empleado de confianza de por sí no priva al empleado que la ostenta de la protección constitucional contra el discrimen político, Íd., pág. 137; Ramos v. Srio. de Comercio, 112 D.P.R. 514 (1982).

[37] 80 D.P.R. 537 (1958).

[38] 146 D.P.R. 215 (1998).

anterior ley de despido injustificado[39] y bajo la actual Ley 80, respectivamente.  En ambos, dispusimos claramente que **la mera falta de confianza en un empleado no constituye justa causa para su despido**.  Por tanto, somos del criterio que la falta de confianza, sin más, de la entrante Junta de Directores de AEELA en el señor García Burgos no justificó su despido desde la perspectiva de la Ley 80, por lo que éste tiene derecho a que se le pague la indemnización por despido injustificado que dicha ley dispone.

Finalmente, sabemos que es requisito indispensable para la aplicación de la Ley 80 que el empleado que invoque su protección haya sido contratado por tiempo indeterminado. "La Ley de Indemnización por Despido Injustificado no aplica a los empleados contratados por tiempo determinado".[40]

No obstante, la Ley 80 establece con claridad que el mero hecho de que un empleado preste servicios al amparo de un contrato por tiempo determinado, por sí solo, no tiene el efecto automático de privarle de su protección y remedio, si la práctica y circunstancias envueltas u otra evidencia en la contratación fueren de tal naturaleza que tiendan a indicar la creación de una expectativa de continuidad de empleo o la existencia real de un contrato de empleo por tiempo indeterminado.[41]

---

[39] Derogada Ley Núm. 50 de 15 de abril de 1949, según enmendada.

[40] A. Acevedo Colom, *op cit*, pág. 177.

[41] 29 L.P.R.A. sec. 185a.

La Ley 80 dispone que, en éstos casos, los empleados así afectados se considerarán como si hubieren sido contratados sin tiempo determinado. Incluso, la Ley 80 va más allá, y declara que toda separación, terminación o cesantía de empleados contratados por término cierto o para proyecto u obra cierta, o la no renovación de su contrato, se presumirá que constituye un despido sin justa causa regido por la Ley 80, excepto cuando el contrato de empleo en cuestión sea por término cierto *bonafide* o para un proyecto u obra cierta *bonafide*.[42]

Para darle contexto a la presunción, la Ley 80 define lo que es un contrato *bonafide* por término cierto o para una obra cierta:

> **Se considerará *bonafide*** un contrato de empleo por un término cierto o para un proyecto o una obra cierta, **aquel que se hace** por **escrito**, **durante la primera jornada de trabajo** del empleado o en el caso de empleados contratados por compañías clientes por intermediación de compañías de servicios temporeros de empleos, durante los primeros diez (10) días del comienzo de su contrato **y que tiene el propósito, y así se hace constar, de sustituir durante su ausencia a un empleado en el uso de licencia legalmente establecida o establecida por el patrono o para llevar a cabo tareas extraordinarias o de duración cierta como son, sin que constituya una limitación, los inventarios anuales, la reparación de equipo, maquinaria o las facilidades de la empresa, el embarque y desembarque casual de carga, el trabajo en determinadas épocas del año como la Navidad, las órdenes temporeras de aumentos de producción y cualquier otro proyecto o actividad particular de corta duración o duración cierta fija** (énfasis nuestro).[43]

---

[42] Íd. Véase, además, Opinión del Secretario del Trabajo Núm. 91-5, de 8 de noviembre de 1991.

[43] 29 L.P.R.A. sec. 185k.

Finalmente, en aras de lograr la consecución de sus propósitos, la Ley 80 manda lo siguiente:

> [e]n toda acción entablada por un empleado reclamando los beneficios dispuestos por esta ley, cuando se trate de que el empleado fue contratado por un término cierto o para un proyecto o una obra cierta, **el patrono vendrá obligado a <u>alegar en su contestación a la demanda</u> estos hechos <u>y a probar la existencia de un contrato *bonafide* para entonces quedar eximido de cumplir con el remedio que dispone la ley</u>, salvo que el patrono pruebe que el despido fue justificado** (énfasis suplido).[44]

La política pública sobre la contratación de empleados por término determinado está claramente plasmada en la Ley 80. El legislador condicionó la existencia y validez de un contrato de empleo por tiempo determinado al cumplimiento de detallados y estrictos requisitos de forma. Su propósito, desalentar la práctica patronal de evadir las disposiciones remediales de la Ley 80 mediante la contratación de empleados por tiempo determinado, en circunstancias en que éstos, en la práctica, están desempeñando funciones de duración indeterminada.[45] En definitiva, tal y como precisa el profesor y tratadista Alberto Acevedo Colom, en el sector de empleo no gubernamental, "el reclutamiento de empleados por un término específico de tiempo está limitado a que el empleo sea uno de carácter provisional, **tras lo cual no se retendrá personal alguno realizando las funciones del mismo**" (énfasis añadido).[46]

---

[44] Íd.

[45] A. Acevedo Colom, *op cit*, pág. 168.

[46] Íd., pág. 175.

Por tanto, aunque AEELA puede contratar un Director Ejecutivo por tiempo determinado, por ejemplo, hasta el vencimiento del término de la Junta de Directores que lo contrató, debe tener presente lo siguiente. Una vez expire tal contrato de empleo temporero, **no quedará eximida de cumplir con el pago de la compensación por despido injustificado**, a no ser que el contrato de empleo temporero sea *bonafide*, con arreglo a la Ley 80.[47]

## III

Por los fundamentos antes expuestos, estamos conformes con el resultado que la división del Tribunal ha provocado en el presente caso, esto es, la confirmación de la sentencia del Tribunal de Apelaciones que declara "Con lugar" la demanda de despido injustificado incoada por el recurrido señor García Burgos.

Efraín E. Rivera Pérez
Juez Asociado

---

[47] Estamos conscientes, sin embargo, que el caso de autos es uno atípico. Sabemos que, como norma general, los altos ejecutivos en el campo cooperativo son contratados a término, pero, con una salida negociada. Así, al vencimiento del contrato de empleo por tiempo determinado, si éste no es renovado, el ejecutivo recibe los beneficios de salida que negoció y pactó en su contrato individual de empleo.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo García Burgos

    Recurrido

       v.                    CC-2005-185    Certiorari

Asociación de Empleados del
Estado Libre Asociado de
Puerto Rico

    Peticionario

Opinión Disidente emitida por el Juez Presidente señor Hernández Denton, a la cual se une el Juez Asociado señor Rebollo López

San Juan, Puerto Rico, a 20 de febrero de 2007.

Disiento de la Sentencia dictada por el Tribunal de Apelaciones –la cual se confirma por hallarse igualmente dividido el Tribunal– por entender que la naturaleza y el funcionamiento de la Asociación de Empleados del Estado Libre Asociado (en adelante, la Asociación) impide que se le trate como a cualquier empresa privada y, por ende, que se le apliquen indistintamente las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976, estatuto destinado al sector privado del país. Por otro lado, considero que –aún si se entendiera que dicho estatuto podría cobijar a los empleados de la Asociación– la protección no

se extiende al cargo de Director Ejecutivo, toda vez que dicho funcionario responde a los intereses de la Junta de Directores y no posee una expectativa de continuidad en el empleo.

                                I.

La Junta de Directores de la Asociación nombró al Sr. Wilfredo García Burgos Director Ejecutivo de la Asociación en febrero de 1997. Poco después, la Junta cambió su composición y, tras varios incidentes que llegaron hasta la atención de este Tribunal, destituyó al señor García Burgos por no ser de su confianza.

El señor García Burgos presentó una demanda en contra de la Asociación al amparo de la Ley Núm. 80, *supra*, alegando que se le destituyó sin justa causa y solicitó el pago de la mesada. Por su parte, la Asociación presentó una solicitud de sentencia sumaria mediante la cual adujo que el demandante no estaba protegido por la Ley Núm. 80, *supra*. El tribunal de instancia acogió la posición de la Asociación. Concluyó que el señor García Burgos no tenía derecho a los beneficios de la Ley Núm. 80, *supra*, porque su nombramiento era de Director Ejecutivo, puesto sobre el cual la Junta de Directores conserva discreción. A la luz de ese análisis, determinó que un cambio en la composición de la Junta conllevaba la designación de un nuevo Director si ésta así lo deseaba. Indicó, además, que su designación constituyó un contrato por tiempo

determinado implícito, por lo que no se cumplían los requisitos de la Ley.

El señor García Burgos acudió ante el Tribunal de Apelaciones, el cual revocó la determinación. Dicho foro concluyó que la Ley Núm. 80, *supra*, ampara a empleados ejecutivos como el señor García Burgos y que la mera falta de confianza no constituye justa causa para el despido. En vista de ello, concluyó que el señor García Burgos tiene derecho al pago de la mesada. Insatisfecha con el dictamen, la Asociación acudió ante nos reproduciendo los mismos argumentos que presentó ante el foro de instancia.

Expedimos el auto y, por hallarse igualmente dividido el Tribunal, se dicta Sentencia confirmatoria de la que emitió el Tribunal de Apelaciones. Por las razones que expondremos a continuación, disentimos.

II.

A

La Asociación de Empleados del E.L.A. "es una institución pública de carácter compulsorio para todos los empleados y funcionarios públicos del Gobierno de Puerto Rico, siendo sus fines estimular el ahorro entre sus asociados y asegurarlos contra inutilidad física o muerte, efectuar préstamos, proveerlos de hogares y clínicas para el tratamiento médico de ellos y sus familiares". First Federal v. Srio. de Hacienda, 86 D.P.R. 56 (1962) (énfasis suplido).

Aún cuando este Tribunal ha indicado que la Asociación no constituye una agencia, departamento, instrumentalidad o corporación pública, Asociación de Empleados v. Vázquez, 130 D.P.R. 407 (1992), lo cierto es que hemos resuelto que no es "un negocio privado ni tiene fines de lucro o especulación". Berríos Miranda v. Asociación de Empleados, 88 D.P.R. 809 (1963) (énfasis suplido). Por el contrario, la Asociación "es un organismo creado gubernamentalmente, altamente reglamentado, cuyo propósito es implementar la política gubernamental del Gobierno del Estado Libre Asociado de Puerto Rico de estimular el ahorro entre los empleados públicos" Asociación de Empleados v. Vázquez, supra. (Énfasis suplido).

De hecho, en atención a las particularidades de la Asociación y al alto interés público que la distingue, el legislador dispuso que sus bienes, cuentas, desembolsos, fondos e ingresos estarán sujetos a la fiscalización de la Oficina del Contralor. 3 L.P.R.A. Sec. 862l. De la misma forma, se estableció que la Asociación estará bajo la jurisdicción y el poder de la Oficina de Ética Gubernamental. 3 L.P.R.A. Sec. 863m.

B.

Por otro lado, la Ley 80, supra, provee una indemnización para aquellos empleados contratados por término indefinido que son despedidos sin justa causa. 29 L.P.R.A. Sec. 185a. Hasta este momento, las disposiciones de la Ley se han aplicado en el ámbito del

empleo privado y no hemos resuelto si las mismas se podrían extender a otros contextos. No obstante, el Departamento del Trabajo y Recursos Humanos ha expresado que dicha legislación está dirigida a los <u>empleados de la empresa privada</u> y a aquellas entidades que operan como empresas privadas. Departamento del Trabajo y Recursos Humanos, *Guía Revisada para la aplicación de la Ley Núm. 80,* págs. 24-25.

En el empleo público, por su parte, rigen las disposiciones y protecciones que concede la Ley de la Administración de Recursos Humanos, Ley Núm. 184 de 3 de agosto de 2004, que derogó la antigua Ley de Personal del Servicio Público. Esta normativa está basada en el principio de mérito, en virtud del cual los empleados incluidos en el <u>servicio de carrera</u> gozan de seguridad en el empleo, siempre que satisfagan los criterios de productividad, eficiencia, hábitos, actitudes, orden y disciplina que deben prevalecer en el servicio público. 3 L.P.R.A. Sec. 1462, 1462e. Aunque las disposiciones de esta legislación no se extienden a las corporaciones o instrumentalidades públicas o público-privadas que funcionan como empresas o negocios privados, la ley exige que dichas entidades adopten reglamentos de personal que incorporen el principio de mérito. 3 L.P.R.A. Sec. 14616.

Por su parte, los empleados incluidos en el <u>servicio de confianza</u> no gozan de las protecciones que concede el principio de mérito. 3 L.P.R.A. Sec. 1462. Tales empleados son los que intervienen o colaboran

sustancialmente en la formulación de política pública, los que asesoran directamente o los que prestan servicios directos al jefe de la agencia. 3 L.P.R.A. Sec. 1465(2). Por la naturaleza de sus funciones, dichos empleados son de libre selección y remoción. *Id*.

Con este marco normativo en mente, analicemos la controversia ante nuestra consideración.

III

La Sentencia que hoy se confirma por hallarse igualmente dividido el Tribunal concluye que el señor García Burgos, quien fuera destituido del cargo de Director Ejecutivo, tiene derecho al pago de la mesada por tratarse de un empleado ejecutivo y por no haberse demostrado justa causa para el despido. De esta manera, se concluye implícitamente que las disposiciones de la Ley Núm. 80, *supra*, son oponibles ante una entidad como la Asociación, aún cuando sus disposiciones van dirigidas, esencialmente, al sector privado del país. En vista de que aún no hemos resuelto si dicha legislación le aplica a entidades que gozan parcialmente de rasgos que caracterizan al empleo público, no podemos avalar dicha conclusión.

Por el contrario, somos del criterio que las particularidades que el legislador le concedió a la Asociación la ubican en una posición especial dentro del esquema social y económico del país, que se distingue de la típica empresa privada. De hecho, muchos de sus

rasgos son incompatibles con los de un negocio privado, por lo que su naturaleza y funcionamiento se asemeja más al de una entidad *cuasi* pública.

Esta impresión cobra fuerza cuando analizamos las disposiciones del Reglamento de Personal de la Asociación, Reglamento R-014 de 26 de agosto de 1992. El mismo contiene una distinción tajante entre los empleados del <u>servicio gerencial</u> y los de <u>alta gerencia</u>. Los empleados del servicio gerencial están asignados a los puestos que no están incluidos en el servicio de alta gerencia. *Reglamento de Personal*, Art. 7.1. Por su parte, el servicio de alta gerencia comprende los puestos de Director Ejecutivo Auxiliar, Ayudante Ejecutivo, Ayudante Especial, así como los puestos con funciones de dirección de departamentos u oficinas. Todos ellos son nombrados por el Director Ejecutivo con la confirmación de la Junta de Directores. *Reglamento de Personal*, Art. 7.2.

Con respecto a los empleados gerenciales, el Art. 11.5 dispone que "[n]ingún[o]… podrá ser destituido o suspendido de empleo y sueldo a menos que <u>medie justa causa</u> y previa formulación de cargos" (énfasis suplido). De la misma forma, el referido artículo establece que "[l]os <u>empleados gerenciales con status regular tendrán permanencia en sus puestos</u> siempre que satisfagan los criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en la Asociación…"

(énfasis suplido). En contraste con las protecciones que se les confieren a los empleados del servicio gerencial, a los que ocupan cargos en el servicio de alta gerencia no se les ofrece ninguna de estas garantías. Seguramente, ello responde al hecho de que tales empleados ocupan puestos importantes desde los cuales dirigen el funcionamiento de las oficinas y formulan política pública. Por tanto, sus labores y la permanencia de su empleo están sujetos a los planes e intereses de la Junta de Directores.

Ahora bien, el puesto de Director Ejecutivo de la Asociación no se encuentra específicamente enumerado dentro de los dos grupos señalados. Aún así, debemos entender que por definición se le incluyó dentro del grupo de empleados de alta gerencia ya que tiene funciones de dirección de departamentos y oficinas, lo que implica que no posee el derecho de permanencia que cobija a los empleados incluidos en el servicio gerencial.

Por otro lado, si se entendiera que el Director Ejecutivo no se encuentra en ninguno de los grupos señalados, entonces debemos concluir que le aplican las normas que surgen directamente de la Ley de la Asociación de Empleados del Estado Libre Asociado, Ley Núm. 133 de 28 de junio de 1966. Dicho estatuto ordena que la Asociación sea administrada por una Junta de Directores, la cual posee todos los poderes que sean convenientes y

necesarios para el logro de los propósitos de la entidad. 3 L.P.R.A. Sec. 862d(b). Entre esos poderes se encuentra, precisamente, la potestad para nombrar un Director Ejecutivo y fijarle su sueldo. 3 L.P.R.A. Sec. 862f(p). El Director Ejecutivo, por mandato de ley, es el funcionario ejecutivo de la Asociación que está llamado a <u>cumplir con los deberes que la Junta le asigne</u> y, para ello, se le ordena prestar una fianza que asegure <u>el fiel cumplimiento de sus deberes</u>. *Id*.

De lo anterior surge que, mediante disposiciones reglamentarias, la Asociación incorporó a sus normas de personal la distinción entre empleados de carrera y empleados de confianza (aunque nombrados de otra forma), distinción que se suele circunscribir al sector público del país. De tales pautas se colige, además, que allí se incorporaron las garantías básicas que se le conceden a los empleados públicos y que son las que hacen innecesaria la aplicación de las disposiciones protectoras de la Ley Núm. 80, *supra*, en ese ámbito laboral.

Conforme a lo anterior, y dada la naturaleza *cuasi* pública de la Asociación, somos del criterio que no se puede presumir que las disposiciones de la Ley Núm. 80, *supra*, son oponibles ante la Asociación, sobre todo tomando en cuenta que al hacerlo podría trastocarse la forma en que el legislador concibió la naturaleza y el funcionamiento de la entidad y restringiría las

prerrogativas que le concedió a la Junta de Directores que administra el organismo.

Finalmente, consideramos que -aún si se entendiera que los empleados de la Asociación podrían estar cobijados por la Ley Núm. 80, *supra*,- el cargo de Director Ejecutivo no goza de las protecciones que concede dicha legislación. Ello en vista de que, conforme las disposiciones del Reglamento de Personal de la Asociación y su ley habilitadora, el puesto de Director Ejecutivo constituye un cargo que responde a los intereses de la Junta de Directores, lo que excluye la posibilidad de una expectativa de permanencia en el empleo. Así surge claramente de las disposiciones reglamentarias discutidas y de las pautas legislativas que requieren que el Director Ejecutivo le responda a las necesidades de la Junta y le preste fidelidad al cumplimiento de sus deberes hacia la misma. Por tanto, aún cuando el puesto de Director Ejecutivo no se incluyó expresamente en el listado de empleados de alta gerencia en el Reglamento de Personal, consideramos que dicho funcionario -tal como los empleados de confianza en el sector público- por imperativo legal no tiene expectativa de continuidad en el empleo y, en consecuencia, no se requiere justa causa para su despido.

IV.

Por los fundamentos que anteceden, revocaríamos el dictamen del foro apelativo y desestimaríamos la

reclamación instada por el señor García Burgos en contra de la Asociación al amparo de la Ley Núm. 80, *supra*.


                                    Federico Hernández Denton
                                         Juez Presidente